## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY, et al. | |
| Plaintiffs, | Hon. Nancy G. Edmunds<br>Case No.: 2:18-CV-11503-NGE-DRG |
| v. | |
| TOLEDO ENGINEERING CO., INC. and DREICOR, INC | |
| Defendants. | |

| | |
|---|---|
| PAUL B. HINES (P47328)<br>MELINDA A. DAVIS (P51936)<br>GLENN W. MATTAR<br>DENENBERG TUFFLEY PLLC<br>*Attorneys for Plaintiffs*<br>28411 Northwestern Hwy., Suite 600<br>Southfield, MI 48034<br>Telephone: (248) 549-3900<br>Facsimile: (248) 593-5808<br>Email: phines@dt-law.com<br>Email: mdavis@dt-law.com<br>Email: gmattar@dt-law.com | THOMAS G. CARDELLI<br>CARDELLI LANFEAR, P.C.<br>*Attorneys for Defendants*<br>322 W. Lincoln Avenue<br>Royal Oak, MI  48067<br>Telephone: (248) 544-1100<br>Facsimile: (248) 544-1191<br>Email: tcardelli@chl-pc.com |
| HOBART HIND, JR.<br>JESSICA M. SKARIN<br>BUTLER WEIHMULLER KATZ & CRAIG, LLP<br>*Attorneys for Plaintiffs Ace, Axis Insurance, National Fire and Westport Insurance*<br>400 N. Ashley Drive, Suite 2300<br>Tampa, FL 33602<br>Telephone: (813) 281-1900<br>Facsimile: (813) 281-0900<br>Email: jskarin@butler.legal<br>Email: hhind@butler.legal | SCOTT H. SIRICH<br>PLUNKETT COONEY<br>*Co-Counsel for Defendant Toledo Engineering*<br>38505 Woodward Ave., Ste. 2000<br>Bloomfield Hills, MI  48304-5096<br>Telephone: (248) 594-8228<br>Facsimile: (248) 901-4040<br>Email: ssirich@plunkettcooney.com |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT DREICOR,
INC.'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT
[ECF NO. 89]**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS …………………………………………………...….. i

COUNTER-STATEMENT OF THE ISSUES PRESENTED ……………...…….ii

STATEMENT OF CONTROLLING OR MOST
APPROPRIATE AUTHORITIES…………………………………………...…iii

INDEX OF AUTHORITIES……………………………………………………iv

INDEX OF EXHIBITS………………………………………………...…vii

I.     INTRODUCTION ……………………………………………………1

II.    COUNTER-STATEMENT OF THE FACTS…………………….…..2

      A. The Dreicor Contract and the Project………………………….……..2

      B. The Explosion and the Lawsuit ……………………………...……..3

III.   LEGAL STANDARD ……………………………………………...…6

      A. Summary Judgment Standard ……………………………………...…6

      B. Contract Construction Standard………………………………….……6

IV.   ARGUMENT ……………………………………………………...…8

      A. At a Minimum, There is a Genuine Issue of Material Fact as to
         Whether the Waiver of Subrogation is Applicable to Post-
         Construction Damages ……………………………………………....8

      B. To the Extent the Court Holds that the Waiver of Subrogation
         Applies to Post-Construction Damages, There is, at a Minimum,
         a Genuine Issue of Material Fact as to Whether the Waiver
         Applies to "Non-Work" Damages …………………………….……13

V.    CONCLUSION …………………………………………………...…20

i

## <u>COUNTER-STATEMENT OF THE ISSUES PRESENTED</u>

I.   SHOULD DREICOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT BE GRANTED WHERE GENUINE ISSUES OF MATERIAL FACT REMAIN AS TO WHETHER A WAIVER OF SUBROGATION RELIED UPON BY DREICOR APPLIES TO POST-CONSTRUCTION DAMAGES?

   Defendant Dreicor says:        "Yes"

   Plaintiffs say:                "No"


II.  SHOULD DREICOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT BE GRANTED WHERE GENUINE ISSUES OF MATERIAL FACT REMAIN AS TO WHETHER THE WAIVER OF SUBROGATION RELIED UPON BY DREICOR APPLIES TO DAMAGE TO "NON-WORK" PROPERTY?

   Defendant Dreicor says:        "Yes"

   Plaintiffs say:                "No"

## <u>STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

**Controlling Authority**

Federal Rule of Civil Procedure 56

*Village of Edmore v Crystal Automation Systems Inc.*, 322 Mich. App. 244, 911 N.W.2d 241 (2017)

**Persuasive Authority**

*Garden City Apartments, LLC v. Xcel Plumbing of N.Y.*, Inc., 233 F. Supp. 3d 346 (E.D.N.Y. 2017)

*Hartford Underwriters Ins. Co. v. Phoebus*, 187 Md. App. 668, 979 A.2d 299 (2009)

*S.S.D.W. Company v Brisk Waterproofing* Co., 556 N.E.2d 1097 (N.Y. 1990)

iii

# INDEX OF AUTHORITIES

**Cases**

*Allied Mechanical Services, Inc. v National Fire & Marine Ins. Co.*,
259 F. Supp.3d 725 (W.D. Mich. 2017)……………………………………………7

*Auto. Ins. Co. v. United H.R.B. Gen. Contractors*,
876 S.W.2d 791 (Mo. Ct. App. 1994)……………………………………………….11

*Batton-Jajuga v Farm Bureau General Insurance Co. of Michigan*,
322 Mich. App. 422, 913 N.W.2d 351 (2017) …………………………..………7

*Coates v Bastian Brothers, Inc.*,
276 Mich. App. 498, 741 N.W.2d 539 (2007)…………………………...………7

*Colonial Props. Realty P'ship v. Lowder Constr. Co.*,
256 Ga. App. 106, 567 S.E.2d 389 (2002) …………………………………11-12

*Copper Mountain, Inc. v Industrial Systems, Inc.*,
208 P.3d 692 (Colo. 2009)……………………………………………………...16

*Drouillard v American Alternative Ins. Corp.*,
323 Mich. App. 212, 916 N.W.2d 844 (2018)………………………………….7, 15

*Fidelity and Guaranty Insurance Company v Craig-Wilkinson, Inc.,*
948 F. Supp. 608 (S.D. Miss.1996), *aff'd,* 101 F.3d 699 (5th Cir. 1996)……..16, 18

*Galeana Telecommunications Investments, Inc. v Amerifone Corp.*,
202 F. Supp.3d 711 (E.D. Mich. 2016)………………………………………….8

*Garden City Apartments, LLC v. Xcel Plumbing of N.Y., Inc.*,
233 F. Supp. 3d 346 (E.D.N.Y. 2017)…………………………………………8-9

*Hartford Underwriters Ins. Co. v. Phoebus*,
187 Md. App. 668, 979 A.2d 299 (2009)…………………………....…10-13

*In re Smith Trust*,
480 Mich. 19, 745 N.W.2d 754  (2008)………………………………………..6-7

iv

*Laplante v. City of Battle Creek*,
30 F.4th 572 (6th Cir. 2022)……………………………………………....6

*Knob Noster R-VIII School District v Dankenbring*,
220 S.W.3d 809 (Mo. Ct. App. 2007) ………………………………….16, 18

*Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, L.L.C.*,
290 So. 3d 1257 (Miss. 2020)…………………………………………..16

*Lumbermens Mut. Cas. Co. v. Grinnell Corp.*,
477 F. Supp. 2d 327 (D. Mass. 2007)…………………………………..12

*Neth. Ins. Co. v. Cellar Advisors*, LLC,
No. 4:17-CV-2585 PLC, 2019 U.S. Dist. LEXIS 10655
(E.D. Mo. Jan. 23, 2019)………………………………………………...9

*Public Employees Mut. Ins. Co. v Sellen Construction*,
740 P.2d 913(Wash. Ct. App. 1987) …………………………………..16

*Samaan v General Dynamics Land Systems, Inc.*,
835 F.3d 593 (6th Cir. 2016) ……………………………………..……7

*St. Catherine of Sienna Catholic Church v. J.R. Pini Electrical Contractors. Inc.*,
No. 97C-09-181, 2000 W.L 1211146 (Del. Super. Ct. 2000)……………....…16

*Shay v Aldrich*,
487 Mich. 648, 790 N.W.2d 629 (2010) ………………………………..8

*S. Ins. Co. v. CJG Enters.*,
No. 3:15-cv-00131-RGE-SBJ, 2017 U.S. Dist. LEXIS
129514 (S.D. Iowa May 11, 2017)…………………………………..……11

*S.S.D.W. Company v Brisk Waterproofing* Co.,
556 N.E.2d 1097 (N.Y. 1990) …………………………………...…16-18

*Town of Silverton v. Phx. Heat Source Sys.*,
948 P.2d 9 (Colo. App. 1997)……………………………………………11-12

v

*Travelers Ins. Co. v Dickey,*
799 P.2d 625 (Okla. 1990)…………………………………………………...…16

*TX. C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc.*,
233 S.W.3d 562 (Tex. App. 2007)…………………………………….……….12

*Village of Edmore v Crystal Automation Systems Inc.*,
322 Mich. App. 244, 911 N.W.2d 241 (2017) ………………………...…7, 13

**Statutes and Court Rules**

Federal Rule of Civil Procedure 56………………………………………..…6

## <u>INDEX OF EXHIBITS</u>

EXHIBIT A        9/27/2016 Guardian/Dreicor Purchase Order

EXHIBIT B        Victor Moore Deposition Excerpts

EXHIBIT C        Adam Gravert Deposition Excerpts

EXHIBIT D        Unpublished Opinion – *Neth. Ins. Co. v. Cellar Advisors*

EXHIBIT E        Unpublished Opinion – *S. Ins. Co. v. CJG Enters.*

EXHIBIT F        Unpublished Opinion - *St. Catherine of Sienna Catholic Church v. J.R. Pini Electrical Contractors. Inc.*

# I.   <u>INTRODUCTION</u>

This action involves a June 3, 2017 catastrophic explosion and fire at Guardian Industries' glass manufacturing plant in DeWitt, Iowa. Plaintiffs, Guardian's subrogated property insurance carriers, contend that the explosion was the result of improper engineering, installation and other work performed by Defendants Toledo Engineering Company, Inc. ("TECO") and Dreicor, Inc. ("Dreicor") during a renovation project at the plant. Specifically, Plaintiffs allege that a coupling, which Dreicor installed on a 10" gas line just a few weeks before the explosion, separated and released a significant amount of gas into the plant, causing the explosion. Plaintiffs filed the present subrogation lawsuit against Dreicor and TECO on May 11, 2018, seeking reimbursement of $80,000,000 in insurance claim payments as a result of the explosion.

Dreicor now moves for summary judgment as to all of Plaintiffs' causes of action except for Gross Negligence on the grounds that a waiver of subrogation in the parties' agreement bars such claims. However, as there are temporal and spatial limits on the waiver of subrogation, Dreicor's Motion should be denied. There are, at a minimum, genuine issues of material fact as to 1) whether the waiver of subrogation applies to damages that occurred after the project was completed, and 2) whether the waiver of subrogation applies to damaged to portions of the plant that were not the subject of Dreicor's work on the project.

1

## II.   COUNTER-STATEMENT OF THE FACTS

### A. The Dreicor Contract and the Project

In 2015/2016, Guardian retained TECO and Dreicor to perform a renovation of the glass furnace and associated equipment at Guardian's glass manufacturing plant in DeWitt, Iowa (the "Plant"). [*See* Ex. R to TECO Motion for Partial Summary Judgment, ECF No. 88-18, 12/10/2015 Guardian/TECO Purchase Order; Ex. A, 9/27/2016 Guardian/Dreicor Purchase Order]. This work, which involved turning the furnace off to perform various repairs, is known as a "Cold Tank Repair" (hereinafter the "Project"). [*See* Ex. B, Victor Moore Dep. Excerpts, 15:4-10]. Specifically, TECO performed engineering, project management and project administration work with respect to the Project, while Dreicor performed the installation work. [*See* Ex. R to TECO Motion for Partial Summary Judgment, ECF No. 88-18, 12/10/2015 Guardian/TECO Purchase Order; Ex. A, 9/27/2016 Guardian/Dreicor Purchase Order]

Prior to the Project, Guardian and Dreicor negotiated general terms and conditions for services and equipment Dreicor would provide to Guardian. These terms were entitled "Guardian Contract Terms for Construction Work and Equipment Supply with Dreicor, Inc" (hereinafter the "Guardian/Dreicor General Terms"). [Ex. C to Dreicor Motion, Guardian/Dreicor General Terms]. The Guardian/Dreicor General Terms were originally prepared on September 29, 2013,

2

but were updated June 3, 2016. [*Id.*, p. 1]. On September 27, 2016, Guardian issued Dreicor a purchase order for Dreicor's work on the Project. [Ex. A, Guardian/Dreicor Purchase Order].

Pursuant to the Guardian/Dreicor General Terms, Guardian was required to obtain "property insurance for the full insurable value of the Work." [Ex. C to Dreicor Motion, Guardian/Dreicor General Terms, Section 4.2(c)]. The "Work" is defined as "the construction work and other services necessary to fully complete the scope of work set forth in the Specifications." [*Id.*, Section 1]. The Guardian/Dreicor General Terms also contained a mutual waiver of subrogation which provided that "Guardian and you will waive all rights against each other and against any architect for damages caused by fire or other perils to the extent covered by the insurance required in this section." [*Id.*, Section 4.2(c)].

### B.   <u>The Explosion and the Lawsuit</u>

During the course of the Project, Dreicor performed work on a 10" gas line, including the installation/replacement of a coupling on May 13, 2017. [*See* Complaint, ECF No. 1, ¶¶ 21-23]. On June 3, 2017, a large explosion and fire occurred at the Plant, causing extensive damage (the "Explosion"). [*Id.*, ¶¶ 26-30]. Subsequent investigations revealed that the Explosion was caused from a gas release when the coupling Dreicor installed just weeks before separated. [*See id.*, ¶ 32].

3

The Project was complete prior to the Explosion. The furnace heat-up was complete, and the furnace was in production. [Ex. C, Adam Gravert Dep. Excerpts 42:11-14 (heat up was completed and they were in production)]. Further, Dreicor superintendent Victor Moore testified that the Project was complete prior to the explosion:

> Q:   Did the CTR [Cold Tank Repair] complete before the explosion at DeWitt?
>
> A.   Yes.

[Ex. B, Victor Moore Dep. Excerpts, 33:20-22].

As a result of the Explosion, Plaintiffs, Guardian's property insurance carriers, issued insurance payments to or on behalf of Guardian in the amount of $80,000,000. [*See* Dreicor Motion, p. 1]. Subsequently, on May 11, 2018, Plaintiffs filed the present lawsuit against Dreicor and TECO, seeking reimbursement of the aforementioned insurance claim payments [Complaint, ECF No. 1].[1] Plaintiffs asserted Negligence and/or Gross Negligence, Breach of Contract and Breach of Express and/or Implied Warranties causes of action against Dreicor and TECO. [*Id.*]

---

[1] With respect to Dreicor, the Guardian/Dreicor General Terms contained a choice of law and venue provision dictating Michigan law and the United States District Court for the Eastern District of Michigan as the applicable venue for disputes. [Ex. C to Dreicor Motion, Guardian/Dreicor General Terms, Section 8.7]. Further, the Guardian/Dreicor purchase order terms and conditions also contained a Michigan choice of law provision. [Ex. A, Guardian/Dreicor Purchase Order Terms, ¶ 20].

Plaintiffs allege that numerous errors and omissions by Dreicor and TECO caused the coupling to separate. These include, but are not limited to, 1) the removal of piping support when replacing the coupling, 2) the failure to follow the coupling's installation instructions by centering the coupling over the piping, 3) the selection of a coupling that did not provide protection from pipe pullout, 4) the failure to request and/or perform an engineering review when performing modifications to the piping system, and 5) the failure to install one of the nuts on the coupling. [*See id.*]

In early 2019, Dreicor moved for partial summary judgment, arguing that the waiver of subrogation in the Guardian/Dreicor General Terms bars all of Plaintiffs' claims except for Gross Negligence. [Dreicor Motion for Partial Summary Judgment, ECF No. 42]. On August 20, 2019, this Court entered an Order denying Dreicor's motion without prejudice. [Order Denying Defendants' Motions for Partial Summary Judgment Without Prejudice, ECF No. 56]. This Court did not issue any rulings on the substantive arguments with respect to the waiver, but rather denied the Motion on the grounds that the Motion was premature as Plaintiffs should first be entitled to discovery. [*See id.*]

Since the Court's ruling, the parties have engaged in extensive discovery, including conducting approximately 30 depositions. Plaintiffs submitted their expert reports on July 1, 2022. Defendants' expert reports are due on December 23, 2022 and trial is set to begin on April 11, 2023.

Dreicor now renews its Motion for Partial Summary Judgment on the waiver of subrogation, again arguing that the waiver bars all of Plaintiffs' causes of action except Gross Negligence. Dreicor agrees that the waiver of subrogation will not bar Plaintiffs' Gross Negligence cause of action.

## III.  LEGAL STANDARD

### A. **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "At the summary judgment stage, courts are required to view the facts and draw reasonable inferences in 'the light most favorable to the party opposing the summary judgment motion.'" *Laplante v. City of Battle Creek*, 30 F.4th 572, 578 (6th Cir. 2022) (internal quotations and citations omitted). "If the evidence would allow a reasonable jury to find in favor of a non-moving party, summary judgment may not be granted." *Id.*

### B. **Contract Construction Standard**

The basic framework for the construction of a contract is laid out in *In re Smith Trust*, 480 Mich. 19, 24, 745 N.W.2d 754, 757-758 (2008):

> In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. If the contractual language is ambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter

of law. However, if the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties.

The determination of whether a contract is ambiguous is for the court. However, if a contract is found to be ambiguous, the resolution of the ambiguity is a question of fact reserved for the fact-finder. *Batton-Jajuga v Farm Bureau General Insurance Co. of Michigan*, 322 Mich. App. 422, 434 n.1, 913 N.W.2d 351, 357 n.1 (2017); *Village of Edmore v Crystal Automation Systems Inc.*, 322 Mich. App. 244, 263, 911 N.W.2d 241, 251 (2017).

In making an ambiguity determination, every word, phrase, and clause in a contract must be given effect, and an interpretation that would render any part of the contract surplusage or nugatory must be avoided. *Drouillard v American Alternative Ins. Corp.*, 323 Mich. App. 212, 217, 916 N.W.2d 844, 847 (2018). Contract terms are not to be considered in isolation, and contracts are to be interpreted to avoid absurd or unreasonable conditions and results. *Samaan v General Dynamics Land Systems, Inc.*, 835 F.3d 593, 601-602 (6th Cir. 2016); *Allied Mechanical Services, Inc. v National Fire & Marine Ins. Co.*, 259 F. Supp.3d 725, 730 (W.D. Mich. 2017).

An ambiguity may be patent or latent.  A patent ambiguity exists when two contract provisions irreconcilably conflict with each other, or when contract terms are equally susceptible to more than a single meaning. *Village of Edmore*, 911 N.W.2d at 251; *Coates v Bastian Brothers, Inc.*, 276 Mich. App. 498, 505, 741 N.W.2d 539, 543 (2007).  With respect to a latent ambiguity:

. . .[It] "exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation and choice among two or more possible meanings.". . .To verify the existence of a latent ambiguity, a court must examine the extrinsic evidence presented and determine if in fact that evidence supports an argument that the contract language at issue, under the circumstances of its formation, is susceptible to more than one interpretation.

*Galeana Telecommunications Investments, Inc. v Amerifone Corp.*, 202 F. Supp.3d 711, 720 (E.D. Mich. 2016)(citation omitted). *See also Shay v Aldrich*, 487 Mich. 648, 668, 790 N.W.2d 629, 641 (2010)("[b]ecause the detection of a latent ambiguity requires a consideration of factors outside the instrument itself, extrinsic evidence is obviously admissible to prove the existence of the ambiguity, as well as to resolve any ambiguity proven to exist").

## IV.   ARGUMENT

### A. At a Minimum, There is a Genuine Issue of Material Fact as to Whether the Waiver of Subrogation is Applicable Post-Construction Damages

Plaintiffs do not dispute that the Guardian/Dreicor General Terms applied to Dreicor's work on the Project. Nonetheless, the waiver of subrogation on which Dreicor relies does not prohibit Plaintiffs' claims as Plaintiffs seek recovery of damages that occurred once the Project was complete.

It is well established that waivers of subrogation can be limited depending on the language of the waiver/contract. *See e.g.*, *Garden City Apartments, LLC v. Xcel Plumbing of N.Y.*, Inc., 233 F. Supp. 3d 346, 350 (E.D.N.Y. 2017) (internal citations

and quotations omitted) ("a waiver of subrogation clause cannot be enforced beyond the scope of the specific context in which it appears"); *Neth. Ins. Co. v. Cellar Advisors*, LLC, No. 4:17-CV-2585 PLC, 2019 U.S. Dist. LEXIS 10655, at *19 (E.D. Mo. Jan. 23, 2019) (quoting Couch on Ins. Section 224.90) ("While parties to an agreement may waive their insurers' right to subrogation, the waiver of subrogation clause cannot be enforced beyond the scope of the specific context in which it appears.") [opinion attached as Exhibit D].

The waiver of subrogation in the Guardian/Dreicor General Terms states that "Guardian and you will waive all rights against each other and against any architect for damages caused by fire or other perils <u>to the extent covered by the insurance required in this section</u>." [Ex. C to Dreicor Motion, Section 4.2(c) (emphasis added)]. The insurance Guardian was required to obtain under Section 4.2(c) was "property insurance for the full insurable value of the Work." [*Id.*] The "Work" is defined as "the construction work and other services necessary to fully complete the scope of work set forth in the Specifications." [*Id.*, Section 1].

Therefore, the only property insurance that Guardian was required to obtain under the Guardian/Dreicor General Terms was insurance on the "Work," i.e., the construction work that Dreicor was to perform as part of the Project. There is absolutely no language in the Guardian/Dreicor General Terms that obligated Guardian to maintain insurance on <u>completed Work</u>, or any other insurance at the

9

Plant once the Project was complete. Rather, the language in the Guardian/Dreicor General Terms shows the exact opposite. The definition of "Work' refers to the construction Work "necessary to fully complete the scope of work . . ." [*Id.*, Section 1 (emphasis added)]. In other words, the "Work" is limited to services required to complete construction work on the Project, it does not any completed services performed by Dreicor. An alternative interpretation would have obligated Guardian to insure Dreicor's work at the Plant in perpetuity. Such an interpretation would be unreasonable, and certainty not within the parties' intentions when they entered into the Guardian/Dreicor General Terms.

As Guardian was only required to insure Dreicor's work during the course of the Project, the waiver of subrogation, which is expressly limited to the insurance Guardian was required to obtain under the Guardian/Dreicor General Terms, is necessarily inapplicable to any insurance Guardian may have had in effect at the Plant once the Project was complete. Because the Project was complete at the time of the Explosion, the waiver of subrogation cannot apply Plaintiffs' subrogation claims that are the subject of this action.

Although not specifically addressed by Michigan courts, numerous courts in other jurisdictions have held that waivers of subrogation have a temporal limitation, i.e., limiting the waivers of subrogation only to damages that occur before construction is complete. *See e.g., Hartford Underwriters Ins. Co. v. Phoebus*, 187

Md. App. 668, 688, 979 A.2d 299, 311 (2009); *Auto. Ins. Co. v. United H.R.B. Gen. Contractors*, 876 S.W.2d 791, 795 (Mo. Ct. App. 1994); *S. Ins. Co. v. CJG Enters.*, No. 3:15-cv-00131-RGE-SBJ, 2017 U.S. Dist. LEXIS 129514, at *24 (S.D. Iowa May 11, 2017) [opinion attached as Exhibit E].

As summarized by the Maryland Court of Special Appeals in *Phoebus*, many constructions contracts, which often utilize the American Institute of Architects ("AIA") standard terms, have a "Completed Project Insurance" clause <u>that expressly requires the owner to waive subrogation for policies in effect after construction is complete</u>. *See* 979 A.2d 299 at 306. The *Phoebus* quoted a typical Completed Project Insurance provision as follows:

> [I]f after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with [the waivers of subrogation clause] for damages caused by fire or other perils covered by this separate insurance . . . .

*Id.* The *Phoebus* court concluded "that the Waivers of Subrogation clause and definition of Work in this Contract, existing as they do without a related Completed Project Insurance clause, are not clear as to temporal scope." *Id.* at 309.

Several courts that have held a waiver of subrogation in a construction contract applies to post construction damage were interpreting contracts that that had such a Completed Project Insurance provision. *See e.g.*, *Town of Silverton v. Phx. Heat Source Sys.*, 948 P.2d 9, 13 (Colo. App. 1997); *Colonial Props. Realty P'ship*

11

*v. Lowder Constr. Co.*, 256 Ga. App. 106, 109, 567 S.E.2d 389, 392 (2002); *TX. C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc.*, 233 S.W.3d 562, 573 (Tex. App. 2007). However, some courts have even held that waivers of subrogation in contracts with such a Completed Projects Insurance provision are ambiguous as to their application to post-construction losses. *See Lumbermens Mut. Cas. Co. v. Grinnell Corp.*, 477 F. Supp. 2d 327, 333 (D. Mass. 2007).

Nevertheless, all of the foregoing authority supports Plaintiffs' position that <u>as the Guardian/Dreicor General Terms did not have a Completed Project Insurance provision</u>, the waiver of subrogation clause does not apply to post-construction losses. If the parties intended to waive subrogation for post-construction losses, they could have included a Completed Project Insurance provision (or something similar) requiring Guardian to maintain insurance at the Plant after construction, and/or requiring Guardian to waive subrogation for insurance policies in effect post-construction. As the parties did not include such language, the waiver of subrogation is, at a minimum, ambiguous as to whether it applies to post-construction losses.

Holding that the waiver of subrogation in the Guardian/Dreicor General Terms is inapplicable to post-construction losses is also consistent with the reasoning and public policy behind waivers of subrogation. The *Phoebus* court stated:

> We also agree with Hartford that the public policy consideration
> behind Waivers of Subrogation clauses in construction contracts

12

> pertain to the period of time in which construction is taking place, and not to the (unlimited) period of time after construction and final payment, when the structure is built and being used and the parties no longer are working together to accomplish that. The primary policy consideration is to eliminate the disruption in construction that would result if losses during that time were subject to litigation. When construction is over and the structure is operational, avoiding delays in construction is no longer a goal.

979 A.2d 299 at 311.

By its express language, the waiver of subrogation in the Guardian/Dreicor General Terms is limited to the insurance Guardian obtained for the Project. However, the most reasonable interpretation of the waiver, while evaluating the agreement as a whole, is that the waiver does not extend to Guardian's insurance that may have been in effect at the Plant after the Project was completed. Nevertheless, at a minimum the agreement is ambiguous in this regard, and there is a genuine issue of material fact as to whether the parties intended to waive subrogation for post-construction damages. The jury will resolve this ambiguity. *See Village of Edmore, supra*. Therefore, Plaintiffs respectfully request that the Court deny Dreicor's Motion.

**B. <u>To the Extent the Court Holds that the Waiver of Subrogation Applies to Post-Construction Damages, there is, at a Minimum, a Genuine Issue of Material Fact as to Whether the Waiver Applies "Non-Work" Damages</u>**

In the event the Court concludes the waiver of subrogation in the Guardian/Dreicor General Terms applies to post-construction damages, there is still

13

a genuine issue of material fact as to whether the waiver applies to "Non-Work" damages.[2]

As described in detail above, the waiver of subrogation is limited to the insurance Guardian was required to obtain under the Guardian/Dreicor General Terms. This was only insurance on Dreicor's "Work," i.e. the construction work that Dreicor was to perform as part of the Project. There is nothing in the Guardian/Dreicor General Terms that obligated Guardian to insure portions of the Plant, or separate structures, that did not constitute Dreicor's work. For example, Section 4.2(c) did not state that Guardian was required to insure existing facilities, equipment or personal property.

Because the waiver of subrogation only applies to insurance that Guardian was required to obtain under Section 4.2(c), the waiver is therefore necessarily inapplicable to any additional or more expansive insurance that Guardian may have had in effect at the time of the Explosion. If the waiver simply stated that that Guardian and Dreicor waived subrogation for any insurance obtained by either party with respect to the Plant, the waiver could apply to Work and Non-Work. But,

---

[2] Dreicor does not dispute that there was damage to "Non-Work" in its Motion, but rather contends the distinction is immaterial to the wavier of subrogation. Nevertheless, to provide the Court with context, one clear example of "Non-Work" damage would be the walls of the Plant that were destroyed during the Explosion. The walls of Plant were not within Dreicor's scope of work on the Project.

pursuant to the language used in the waiver, it cannot apply to damage outside of the Work Dreicor performed.

In fact, there is express language in the Guardian/Dreicor General Terms that establishes the parties intended for Non-Work damages to be excluded from the wavier of subrogation. Section 4.1(e), entitled "Preventing Property Damage," states with respect to Dreicor's obligations: "You are responsible for the protection of the plant and equipment where you are working, and all materials, from damage caused by you, including damage caused by your subcontractors." [Ex. C to Dreicor Motion, Guardian/Dreicor General Terms, Section 4.1(e)].

Section 4.1(e) makes Dreicor responsible for damage to the "plant and equipment" where Dreicor is working. Notably, absent from Section 4.1(e) is responsibility for damage to the "Work." Instead, the term "plant" was used, thereby evincing an intent to make Dreicor responsible for aspects of the Plant not constituting Dreicor's Work.

Further, Section 4.1(e) does not state that Dreicor is responsible for <u>uninsured</u> damages to the Plant. It merely states that Dreicor is responsible for damages to the Plant. Interpreting the waiver of subrogation to apply to Non-Work damages is inconsistent with Section 4.1(e), which expressly makes Dreicor responsible for damage to the Plant. If the waiver of subrogation extended to Non-Work damages, Section 4.1(e) would improperly be rendered nugatory. *See Drouillard*, *supra*.

Similar to the Completed Project Insurance provision that is typically contained in AIA standard form contracts, AIA contracts also contain specific provisions stating that the waiver of subrogation applies to "Non-Work" damages:

> If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, . . . the Owner shall waive all rights in accordance with the terms of Subparagraph 11.3.7 [waiver of subrogation provision] for damages caused by fire or other causes of loss covered by this separate property insurance.

*Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, L.L.C.*, 290 So. 3d 1257, 1259 (Miss. 2020). However, there is no similar provision in the Guardian/Dreicor General Terms expressly extending the waiver of subrogation to Non-Work damages.

As with the issue of post-construction applicability of waivers of subrogation, Michigan courts have not addressed the specific issue of a waiver of subrogation's applicability to damage to "Non-Work." Nonetheless, Courts in at least seven states have concluded such waivers do not bar an insurer's subrogation claims for damage to Non-Work property.[3]

---

[3]    *Fidelity and Guaranty Insurance Company v Craig-Wilkinson, Inc.,* 948 F. Supp. 608, 611-614 (S.D. Miss.1996), *aff'd,* 101 F.3d 699 (5th Cir. 1996); *Copper Mountain, Inc. v Industrial Systems, Inc.*, 208 P.3d 692, 698 (Colo. 2009); *St. Catherine of Sienna Catholic Church v J.R. Pini Electrical Contractors. Inc.,* No. 97C-09-181 (Del. Super. Ct. 2000)(2000 W.L. 1211146, at *2) [attached hereto as Exhibit F]; *Knob Noster R-VIII School District v Dankenbring,* 220 S.W.3d 809, 819-820 (Mo. Ct. App. 2007); *S.S.D.W. Company v Brisk Waterproofing* Co., 556 N.E.2d 1097,1099-1100 (N.Y. 1990)*; Travelers Ins. Co. v Dickey,* 799 P.2d 625,

The New York Court of Appeals' decision in *S.S.D.W. Company* is an excellent example of the logic and reasoning behind the approach advocated by Plaintiffs (and supported by the Guardian/Dreicor General Terms). There, the plaintiff (an owner of an apartment building) contracted with the defendant waterproofing contractor to perform corrective work on the exterior of the building and the parking garage floor. The parties entered into a standard AIA form contract with a similar waiver of the subrogation provision found in the instant case.  A fire started in a shed constructed by the defendant on the fifth floor terrace, causing damage to the interior hallways, apartments and to the exterior of the building. The plaintiff's property insurer paid for the loss, and then brought a subrogation action against the defendant contractor to recoup its losses.

The New York Court of Appeals concluded the subrogation waiver clause only barred actions for damages to the Work itself. This was based on the wording of the waiver of subrogation provision, and it also reflected the parties' allocation of insurance responsibilities in the underlying contract:

> Plaintiff owner's construction of [the contract]. . .gives full effect to the bargain concerning the parties' respective insurance responsibilities. . . Under plaintiff's construction, in the event of a claim for non-Work property damage, the insurer under the contractor's liability policy would be responsible.  Under the construction. . .urged by defendants, however, this would not be so. The contractor's liability insurer is

---

630 (Okla. 1990); *Public Employees Mut. Ins. Co. v Sellen Construction,* 740 P.2d 913, 915-916 (Wash. Ct. App. 1987).

> relieved of responsibility for any damage caused by the contractor to parts of the building outside the Work. . .This result is not consistent with the over-all sense of the arrangement in article 17 -- that the contractor is to be responsible for negligently caused damage outside the Work and must carry a policy insuring its liability therefore.

556 N.E.2d 1097, 1099-1100 (footnote omitted). *See also Knob Noster R-VIII School District,* 220 S.W.3d at 819 (if the waiver of subrogation applies to claims for damage to Non-Work property "then the contract would not contain a provision requiring the contractor to obtain insurance to protect against damages to Non-Work areas...[s]uch insurance would not be necessary since the waiver provisions bar all claims arising out of the construction project"); *Travelers Insurance,* 799 P.2d at 630 ("[t]o conclude otherwise would render meaningless [the contractor's obligation]... to purchase liability insurance").

The *S.S.D.W.* court further noted that the defendant contractor's approach (the waiver bars all claims, whether to the Work or to Non-Work property) improperly transforms the owner's property policy into a liability policy for the contractor. 556 N.E.2d at 1100. This same conclusion has been reached by other courts as well. *See Fidelity and Guaranty Insurance,* 948 F. Supp. at 613-614.

Similarly, here, the Guardian/Dreicor General Terms required Dreicor to obtain commercial general liability insurance, including "broad form property damage liability endorsement." [Ex. C to Dreicor Motion, Guardian/Dreicor General Terms, Section 4.2(c)]. This, coupled Section 4.1(e)'s mandate of Dreicor's

responsibility for damage to the Plant or equipment where it was working, establishes Dreicor's obligation to obtain insurance and be responsible for damage to portions of the Plant not constituting the "Work."

Dreicor cites several cases arguing that the majority approach is for waivers of subrogation to apply to both Work and Non-Work. While it is true that it appears the majority of jurisdictions have found that a waiver of subrogation applies to Non-Work, every case must be analyzed individually as the specific contractual language may differ. For example, many of cases that resulted in waivers of subrogation applying to Non-Work damages involved standard form AIA contracts that had express provisions extending the waiver of subrogation to Non-Work damages. At least two of the cases cited by Dreicor involved such contracts. *Lexington Ins. Co. v. Entrex Commun. Servs.*, 275 Neb. 702, 717, 749 N.W.2d 124, 134 (2008) (applicable contract contained a provision extending the waiver of subrogation to Non-Work damages, i.e., Section 11.4.5]); *Westfield Ins. Grp. v. Affinia Dev.*, LLC, 2012-Ohio-5348, ¶ 42, 982 N.E.2d 132, 144 (Ct. App.) (same, but with respect to Section 11.3.5).

At a minimum, the waiver of subrogation in the Guardian/Dreicor General Terms is ambiguous, and genuine issues of material fact exist as to whether it applies to damages to Non-Work. For these reasons, Dreicor's Motion should be denied.

19

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that Dreicor's Motion for Partial Summary Judgment be denied.

Respectfully submitted,

*/s/ Glenn W. Mattar*
PAUL B. HINES (P47328)
MELINDA A. DAVIS (P51936)
GLENN W. MATTAR
Denenberg Tuffley, PLLC
28411 Northwestern Highway, Suite 600
Southfield, Michigan 48034
(248) 549-3900 | Phone
(248) 593-5808 | Facsimile
phines@dt-law.com
mdavis@dt-law.com
gmattar@dt-law.com
*Attorneys for Plaintiffs*

-and-
*/s/ Hobert M. Hind, Jr*
HOBART M. HIND, JR.
JESSICA M. SKARIN
Butler Weihmuller Katz Craig LLP
400 North Ashley Drive, Suite 2300
Tampa, Florida 33602
(813) 281-1900 | Phone
(813) 281-0900 | Facsimile
hhind@butler.legal
jskarin@butler.legal
*Attorneys for Plaintiffs*

Dated: July 8, 2022

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 8, 2022, that the foregoing document was served on upon all attorneys of record through the USDC Eastern District of Michigan CM/ECF website.

*/s/ Glenn W. Mattar*
GLENN W. MATTAR