UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ACE AMERICAN INSURANCE
COMPANY, *et al.*,

           Plaintiffs,

v.

TOLEDO ENGINEERING CO., INC.,
and DREICOR, INC.,

           Defendants.

_____/

Case No. 18-11503
Honorable Nancy G. Edmunds
Magistrate Judge David R. Grand

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT [88, 89]**

This case stems from a large explosion and resulting fire at a glass factory operated by Guardian Industries, LLC ("Guardian"). Plaintiffs are insurers who bring this suit as subrogees of Guardian against the defendant-contractors whom Plaintiffs deem responsible for the incident ("Plaintiff-Insurers"). In their complaint, they allege negligence, gross negligence, breach of contract, and breach of warranty.

On February 27, 2019, Defendants Toledo Engineering Co., Inc. ("TECO") and Dreicor, Inc. ("Dreicor") moved for partial summary judgment arguing that the waivers of subrogation clauses in the contracts they each had with Guardian bar all causes of action against them except those arising from gross negligence. (ECF Nos. 41, 42.) The Honorable Arthur J. Tarnow denied the motions without prejudice so as to give the parties adequate time for discovery. (ECF No. 56.) The case has since been transferred to the undersigned, and the parties have had an opportunity to engage in discovery. Defendants now bring renewed motions for partial summary judgment on the same

1

issue of subrogation. (ECF Nos. 88, 89.) Plaintiffs filed responses in opposition to Defendants' motions and Defendants filed replies to those responses. (ECF Nos. 92, 93, 94, 95.) Upon review of the pleadings and record, the Court finds its decision would not be aided by oral argument on Defendants' motions. Accordingly, the Court declines to hold a hearing and the motions will be decided on the briefs. *See* E.D. MI L.R. 7.1(h). For the reasons that follow, Defendants motions for partial summary judgment are GRANTED.

## I.    Background

In 2015 and 2016, Guardian retained TECO and Dreicor to perform a renovation of the glass furnace and associated equipment at Guardian's glass manufacturing plant in DeWitt, Iowa (the "Project"). (ECF No. 93, PageID.2606.) TECO and Dreicor began to work on the Project in the spring of 2017 and had finished the portion of work known as "Cold Tank Repair" at some point before June 3, 2017. (ECF No. 93-3, PageID.2680.) On that date, a large explosion and fire occurred at Guardian's plant causing extensive damage. Investigations revealed that the explosion was caused from a gas release when the coupling Dreicor installed just weeks before separated. (ECF No. 93, PageID.2613.) Both TECO and Dreicor were involved in work performed on the gas line. (*Id.* at PageID.2612.)

Following the explosion, Plaintiff-Insurers issued payments to or on behalf of Guardian in the amount of $80,000,000 to cover property damage and other losses. (ECF No. 93, PageID.2613.) Plaintiff-Insurers then filed the present lawsuit to recoup that money paid. At issue is whether the contracts between Guardian and TECO and

Guardian and Dreicor permit Plaintiff Insurers' subrogation claims for negligence, breach of contract, and breach of warranty.[1]

## II.    Legal Standard

"Summary judgment is proper only if the moving party shows that the record does not reveal a 'genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014) (quoting FED. R. CIV. P. 56(a)).  A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party and refrain from weighing the evidence itself, or making credibility judgments. *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006) (citing *Bennett v. City of Eastpointe,* 410 F.3d 810, 817 (6th Cir.2005)).

## III.    Analysis

### A.    Plaintiffs' Claims Against TECO

Plaintiff-Insurers' Complaint alleges three causes of action against TECO: (1) Negligence  and/or Gross Negligence (Count 1); Breach of Contract (Count 2); and Breach of Express and/or Implied Warranty (Count 3). TECO argues that each of these

---

[1] Defendants address Plaintiffs' gross negligence claim in separate motions that the Court will decide at a later date. (*See* ECF Nos. 97, 99.)

causes of action, except for gross negligence, must be dismissed as the comprehensive contract between Guardian and TECO (the Engineering Service Agreement, or "ESA") contains a mutual waiver of subrogation clause. (ECF No. 88, PageID.1789.) Plaintiff-Insurers argue against summary dismissal of these claims for three reasons. First, they argue the ESA did not apply to the Project and thus, there was no waiver of subrogation. (ECF No. 93, PageID.2605.) Alternatively, Plaintiff-Insurers argue that even if the ESA applied to the Project, that TECO's motion should still be denied as the ESA only applied to the "engineering" and "design" services that TECO performed for Guardian, not the project management or administration services that TECO also provided. (*Id.* at PageID.2605-06.) Finally, Plaintiff-Insurers argue that even if the ESA applies, the waiver of subrogation does not apply as it is inapplicable to damages that occurred once the Project was complete. (*Id.* at PageID.2606.) The Court takes each of these arguments in turn.

### 1.   *The operative contract is the ESA*

On December 20, 2016, months before the June 3, 2017 explosion, Guardian and TECO executed the Engineering Services Agreement ("ESA"). (ECF No. 88-4.) The ESA includes a choice-of-law provision that establishes State of Michigan laws as governing. (*Id.* at PageID.1852.) It further establishes its "Purpose and Use" as follows:

> Guardian and TECO are entering into this Agreement to establish the terms and conditions on which Guardian may purchase services (including services to be performed at Guardian's facilities) from TECO as an independent contractor, as the Parties may agree from time to time in one or more statements of work . . . which will not be binding until signed by both Parties . . . This Agreement supersedes and replaces any standard terms or forms that TECO or Guardian may submit to the other, whether submitted in a quote, purchase order or otherwise.

4

(ECF No. 88-4, PageID.1844.) Importantly, the ESA also includes the following waiver of subrogation clause:

> Guardian and TECO waive all rights against each other . . . for damages caused by fire or other causes of loss to the extent covered by insurance obtained pursuant to this Section or other insurance applicable to the Services. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

(*Id.* at PageID.1847) and a merger/integration clause:

> The Contract . . . is the entire agreement of Guardian and the Seller; it replaces any prior agreements and understandings, oral or written, between us with respect to the Services.

(*Id.* at PageID.1852.)

Plaintiff-Insurers argue that an earlier agreement and purchase order, not the ESA, apply to the Project and that those agreements do not contain waivers of subrogation. (ECF No. 93, PageID.2607.) But, by its plain language the ESA provides it is meant to replace and supersede all other agreements between the parties. (*See id.* at PageID.1844.)

"Under Michigan law, the primary goal of contract interpretation is to honor the intent of the parties." *In re Auto. Parts Antitrust Litig.*, 997 F.3d 677, 681 (6th Cir. 2021) (citing *Old Kent Bank v. Sobczak*, 620 N.W. 2d 663, 666-67 (Mich. Ct. App. 2000)). Courts achieve this goal by reading the contract "as a whole"—if the language is "clear and unambiguous, the terms are to be taken and understood in their plain, ordinary and popular sense." *Id.* (citing *Old Kent Bank*, 620 N.W.2d at 667; *Michigan Mut. Ins. Co. v.*

*Dowell*, 514 N.W. 2d 185, 188 (Mich. Ct. App. 1994)). Where contract language is clear and unambiguous, courts look only "within the four corners" of that contract and are "prohibited from considering extrinsic evidence to determine the parties' intent." *Id.* at 684-85 (citing *Kyocera Corp. v. Hemlock Semiconductor, LLC*, 886 N.W.2d 445, 451 (Mich. Ct. App. 2015).; *Old Kent Bank*, 620 N.W. 2d at 666-67).

Read in light of Michigan's rules of contract interpretation, the ESA clearly and unambiguously establishes the terms and conditions governing TECO and Guardian's business relationship. These terms and conditions replaced and superseded all "prior agreements and understandings, oral or written" between the parties with respect to the services TECO provided. (ECF No. 88-4, PageID.1852.) Accordingly, following the execution of the ESA, no purchase order or prior agreement terms and conditions could govern the relationship between the parties—including the 2015 purchase order and 2011 agreement Plaintiff-Insurers contend apply to the Project. (See ECF No. 93-1, PageID.2655-56, 2667-69.) Because the ESA is clear and unambiguous, the Court is prohibited from considering these and other outside documents, such as the 2015 email identified by Plaintiff-Insurers which purports to govern the Project "under the current working agreement." (ECF No. 93, PageID.2608.) This too is outside the "four corners" of the ESA and thus outside of the Court's purview. *See In re Auto. Parts Antitrust Litig.*, 997 F.3d at 685.

Plaintiff-Insurers argue there are ambiguities in the ESA, but the Court disagrees. They argue the word "may" in the Purpose and Use portion of the ESA[2] creates an

---

[2] As noted above, the Purpose and Use section of the ESA states that the ESA "establish[es] the terms and conditions on which Guardian ***may*** purchase services" and that the ESA "supersedes and replaces any standard terms or forms that TECO or Guardian ***may*** submit to the other . . ." (ECF No. 88-4, PageID.1844) (emphasis added).

ambiguity when read with the merger/integration clause because the word "may" refers to future terms the parties may exchange, not to retroactive agreements. This argument holds no merit as the common-sense definition of the word "may" does not suggest the word applies only to future circumstances. Rather, the Court interprets the word "may" as in "may" or "may not"— Guardian may or may not choose, or it may or may not have chosen, to hire TECO for work on a particular project. If and when Guardian does choose to hire TECO, the ESA applies to that work. This plain and ordinary meaning of "may" is consistent with the merger/integration clause and therefore no ambiguity exists. *See also* MAY, Black's Law Dictionary (11th ed. 2019) (defining term as "[t]o be permitted" or "[t]o be a possibility" or "[l]oosely, is required to; shall; must"); *In re Auto. Parts Antitrust Litig.*, 997 F.3d at 682 (noting that courts interpreting contracts "can look to the plain and ordinary meaning of . . . terms and phrases as described in dictionary definitions").

Plaintiff-Insurers next argue that the ESA does not replace the parties' prior agreements in all instances, but only with respect to the "Services"—a term the ESA defines as "the engineering or design services as described in the Statement of Work." (ECF No. 93, PageID.2619.) The ESA specifically addresses this in the paragraph 9.8, which provides that "confidentiality agreements, invention agreements, electronic data interchange agreements or other general agreements" between Guardian and TECO remain in effect and are not superseded by the ESA. (ECF No. 88-4, PageID.1852.) Looking at the plain language of this paragraph, which also includes the merger/integration clause identified above, it is clear the ESA replaces and supersedes

all prior agreements, purchase orders, and the like, besides those specifically listed in paragraph 9.8.

This is true even if there is no "Statement of Work" applicable to the Project. True, the merger/integration clause states that the ESA replaces prior agreements and understandings "with respect to the Services," (*Id.* at PageID.1852) and "Services" is defined as "the engineering or design services as described in the Statement of Work," (*Id.* at PageID.1844), but the "Statement of Work" is further defined in the ESA as a document that gives "more detail" regarding the engineering and design services TECO provides. (*Id.*) The ESA does not require a Statement of Work for the agreement to apply to the services provided by TECO, and its absence is not detrimental to TECO's arguments. Plainly, the ESA applies to the services that TECO provided to Guardian through its work on the Project.

## 2. The ESA applies to all services provided by TECO

Plaintiff-Insurers next argue that even if the ESA applies to the Project, that it only applied to "engineering and design" services that TECO performed for Guardian, not TECO's project management or administration services, and that the ESA is ambiguous in this regard. (ECF No. 93, PageID.2622.) As above, this argument holds no merit. The ESA clearly and unambiguously provides that Guardian and TECO "enter[ed] in to [the ESA] to establish the terms and conditions on which Guardian may purchase services (including services to be performed at Guardian's facilities) from TECO . . ." (ECF No. 88-4, PageID.1844.) The ESA is silent as to any distinction between "engineering and design" services or other services TECO may provide. The absence of such a distinction is notable, and the Court will not read an ambiguity into the plain language of the contract.

### 3. The waiver of subrogation is valid and applies

#### a. The waiver of subrogation clause is valid under Michigan law

Michigan law is clear that a waiver of subrogation provision will be enforced, except as it relates to a gross negligence cause of action. *Lamp v. Reynolds*, 645 N.W.2d 311, 314 (Mich. App. 2002). "A subrogees 'stands in the shoes of the subrogor' and acquires the rights possessed by the subrogor." *Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*, 625 F. Supp. 2d 508, 512 (E.D. Mich. 2008) (citing *Yerkovich v. AAA,* 610 N.W.2d 542, 544 (Mich. 2000)). Insurers therefore have no greater rights than those they insure. *See Citizens Ins. Co. of America v. American Community Mutual Ins. Co.*, 495 N.W.2d 798 (Mich. Ct. App. 1993). As this Court has previously noted, when parties to a contract include a waiver of subrogation clause, they are in effect "waiv[ing] the right of their insurer to claim against the wrongdoer after paying a loss. . . . The economic result of the waiver of subrogation is that the insurer alone bears the risk of loss . . ." *Fed. Ins. Co. v. Detroit Med. Ctr.*, No. 08-13322, 2009 WL 136866, at *7 (E.D. Mich. Jan. 16, 2009) (citing Peter S. Britell, Patrice D. Stavile and Mie Ono, *Waivers of Subrogation in a Nutshell,* 235 N.Y.L.J. 9 (Mar. 27, 2006)).

Here, Guardian and TECO waived "all rights against each other . . . for damages caused by fire or other causes of loss . . ." (ECF No. 88-4, PageID.1847.) Plaintiff-Insurers, as subrogees, stand in the shoes of Guardian with only the rights that Guardian would have as against TECO. Because Guardian waived its rights, Plaintiff-Insurers are limited to bringing a gross negligence cause of action under Michigan law and dismissal of any other cause of action against TECO is necessary. *See Lamp*, 645 N.W.2d at 314.

**b.  The waiver of subrogation applies even if the Cold Tank Repair was complete**

The waiver of subrogation in the ESA provides that "Guardian and TECO waive all rights against each other . . . for damages caused by fire or other causes of loss ***to the extent covered by insurance obtained pursuant to this Section or other insurance applicable to the Service*** . . ." (*Id.* at PageID.1847) (emphasis added.) According to Plaintiff-Insurers, this emphasized text means that the waiver can only apply to "(1) insurance that Guardian was required to obtain under the ESA or (2) other insurance applicable to the Services." (ECF No. 93, PageID.2624.) As TECO had completed its Cold Tank Repair work, Plaintiff-Insurers argue that Guardian was no longer required to maintain its insurance, therefore the waiver of subrogation was limited. (*Id.*) (citing paragraph 4.5(b) of the ESA, (ECF No. 88-4, PageID.1847),  which requires Guardian to maintain insurance "until final payment has been made or until no person or entity other than [Guardian] has an insurable interest in the property to be covered").

Although the Cold Tank Repair portion of the work was complete, there is no question of material fact that would prevent summary judgment. TECO and Dreicor were still on site at Guardian's glass manufacturing plant at the time of the explosion and portions of the Project were still underway. (ECF No. 95, PageID.2764.) Thus, Guardian was not the sole entity with an insurable interest in its property. Moreover, Guardian had not made its final payment to TECO. (*Id.*) The conditions in the ESA related to how long Guardian was required to maintain insurance had therefore not been satisfied.

> **c.  The waiver of subrogation applies even if TECO performed work under both the ESA and a separate agreement between TECO and Dreicor**

Plaintiff-Insurers' contend that the waiver of subrogation did not apply because TECO and Dreicor had a separate agreement. (ECF No. 93, 2626.) This argument is misleading and the out-of-state cases Plaintiff-Insurers rely on are unavailing. Even if TECO performed work pursuant to a separate agreement between it and Dreicor, Michigan law does not bifurcate the waiver of subrogation analysis into components regarding policies or damages applicable to work versus non-work under a particular contract. Rather, a waiver of subrogation analysis under Michigan law looks to the cause of action being asserted—limiting a plaintiff to a gross negligence cause of action.

Even if this Court were to look outside of Michigan law, rather than follow the minority view that Plaintiff-Insurers suggest, this Court finds the majority position to have more persuasive force. "The majority of jurisdictions reviewing the application of the subrogation waiver 'criticize the work/non-work distinction as ignoring the language defining the scope of claims falling within the waiver clause.' " *Massachusetts Bay Ins. Co. v. Bilbrey Constr., Inc.*, No. 3:10-CV 94, 2010 WL 11583179, at *4 (S.D. Ohio Nov. 15, 2010) (citing *Trinity Universal Ins. Co. v. Cox Constr., Inc.*, 75 S.W.3d 6, 12 (Tex. App. 2001)). "A limited application of the waiver clause 'undermines the very purpose of the clause ... [and] invites litigation as to whether the damages in any particular case fall within the scope of the work to be performed under the [construction] contract.' " *Id.*

Regardless, whether or not TECO and Dreicor had their own agreement, and the scope of TECO's work under that agreement as opposed to the scope of TECO's work under the ESA, is immaterial here as Plaintiff admits in its Complaint that TECO was

11

working on the Project pursuant to its contract with Guardian. (*See* ECF No. 1, PageID.10, 12.) Moreover, as explained in greater detail below, even if TECO was working on the Project pursuant to a subcontract with Dreicor, the Dreicor-Guardian contract also contains a waiver of subrogation that would apply to TECO in this instance. (*See* ECF No. 95-1.)

> **B.    Plaintiffs' Claims Against Dreicor**

As it does with TECO, Plaintiff-Insurers' Complaint alleges three causes of action against Dreicor: (1) Negligence  and/or Gross Negligence (Count 4); Breach of Contract (Count 5); and Breach of Express and/or Implied Warranty (Count 6). The Court dismisses these claims with the exception of Plaintiff-Insurers' claim for gross negligence.

> **1.    The Dreicor-Guardian Contract, including its waiver of subrogation clause, applies to the Project**

Prior to the Project, Guardian and Dreicor negotiated general terms and conditions for services and equipment Dreicor would provide to Guardian (the "Dreicor-Guardian Contract"). (ECF No. 89-4.) The Dreicor-Guardian Contract was originally prepared on September 29, 2013, but it was updated on June 3, 2016. (*Id.*) Plaintiff-Insurers do not dispute that the Dreicor-Guardian Contract applies to Dreicor's work on the Project. (ECF No. 92, PageID.2544.)

Section 4.2(c) of the Dreicor-Guardian Contract contains the following waiver of subrogation clause:

> Guardian and you will waive all rights against each other and against any architect for damages caused by fire or other perils to the extent covered by the insurance required in this section. You will cause each subcontractor and sub-sub-contractor to similarly waive all rights against all parties. All

insurance policies required under the Contract will permit
and recognize such waivers of subrogation.

(ECF No. 89-4, PageID.2093-94.) This language is similar to subrogation clauses typically found in construction contracts and is effective here to preclude Plaintiff-Insurers from asserting claims, aside from gross negligence, on behalf of Guardian. *See Lamp v. Reynolds*, 645 N.W.2d 311, 314 (Mich. App. 2002).

### 2.     The waiver of subrogation applies even if the Cold Tank Repair was complete

As they did in response to TECO's motion, Plaintiff-Insurers claim that because the Cold Tank Repair work was complete, the waiver of subrogation no longer applied. (ECF No. 92, PageID.2544-49.) This argument is not any more persuasive as applied to Dreicor. As of the date of the explosion, June 3, 2017, Dreicor was "winding down its work on the project, but it still had 60 workers performing more than 2,500 hours of work on the project the week of June 4, 2017." (ECF No. 94, PageID.2744.) Thus, its work on the Project as a whole was not complete, Guardian was still required to hold insurance under Section 4.2(c) of the Dreicor-Guardian Contract, and the waiver of subrogation provision still applied. (*See* ECF No. 89-4 (requiring Guardian "to purchase and maintain property insurance for the full insurable value of the Work."))

Plaintiff-Insurers cannot point to any provision of Michigan law that breaks down subrogation analysis in the way they suggest. Moreover, even if this Court were to deviate beyond Michigan law, Plaintiff-Insurers' argument is still without merit. The three cases that Plaintiff-Insurers cite address circumstances not only after construction was complete, but also after the final payment for the construction was made. *See Hartford Underwriters Ins. Co. v. Phoebus*, 979 A.2d 299 (Md. Ct. Spec. App. 2009) ("after construction and final payment"); *Automobile Ins. Co. v. United HRB Gen. Contractors*,

876 S.W.2d 791, 794 (Mo. Ct. App. 1994) ("We agree that 'work' includes the completed structure, but only for the time interval between the completion of the building and final payment."); *Southern Ins. Co. v. CJG Enterprises*, ___F Supp 3d___; 2017 UWL 3449609, at *4 (S.D. Iowa, May 11, 2017) (loss occurred seven years after construction was complete). None of these cases address the circumstance where, as here, the Project as a whole was still ongoing.

### 3.    The waiver of subrogation applies to all portions of the plant that were damaged due to the explosion or fire

Finally, Plaintiff-Insurers attempt to distinguish the damage that occurred outside of the work Dreicor performed, and they again urge this Court to divert from Michigan law and follow the minority approach taken by some other states. (ECF No. 92, PageID.2550-51.) The Court rejects this argument here for the same reasons it did above in regards to TECO's motion. (*See* above, Section (III)(3)(c)). Courts analyzing waivers of subrogation under Michigan law look to the cause of action being asserted by the subrogor, and do not separately analyze policies or damages. *See Lamp*, 645 N.W.2d at 311.  Moreover, it is disingenuous to suggest that the insurance procured and maintained by Guardian to cover the contractual work and property damage is somehow not the insurance arising out of Guardian's contractual obligations. Instead, the parties agreed that Guardian would maintain the general property insurance, Dreicor would insure its personal property, and both would waive subrogation without limitation. (*See generally*, ECF No. 89-4.)

## IV.     Conclusion

For the foregoing reasons, Toledo Engineering Co., Inc.'s Motion for Partial Summary Judgment (ECF No. 88) is **GRANTED** and Dreicor, Inc.'s Motion for Partial Summary Judgment (ECF No. 89) is **GRANTED.**

**SO ORDERED.**

s/ Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: January 30, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 30, 2023, by electronic and/or ordinary mail.

s/ Lisa Bartlett
Case Manager